UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
++++++++++++++++++++++++++++++++++++++++++++++++++++++

**Anthony N. Potenza,**

           **Plaintiff,**

       **-v-**              **5:07-CV-225 (NAM/GHL)**

**Daniel Gonzales,**

           **Defendant.**

++++++++++++++++++++++++++++++++++++++++++++++++++++++

**Gregory D. Reynolds,**

           **Plaintiff,**

       **-v-**              **5:07-CV-226 (NAM/GHL)**

**Daniel Gonzales,**

           **Defendant.**

++++++++++++++++++++++++++++++++++++++++++++++++++++++

APPEARANCES:

Wiggins, Kopko & Crane, LLP
Edward E. Kopko, Esq., of counsel
308 North Tioga Street
Ithaca, New York 14850
and
Guttman & Wallace
Richard M. Wallace, Esq., of counsel
411 North Tioga Street
Ithaca, New York 14850
Attorneys for Plaintiffs

Office of University Counsel, Cornell University
Nelson E. Roth, Esq., of counsel
Norma Weatherly Schwab, Esq., of counsel
Valerie L. Dorn, Esq., of counsel
Wendy E. Tarlow, Esq., of counsel
300 CCC Building
Garden Avenue
Ithaca, New York 14853
Attorneys for Defendant

**Norman A. Mordue, Chief U.S. District Judge:**

             **MEMORANDUM-DECISION AND ORDER**

**INTRODUCTION**

Daniel Gonzalez,[1] defendant in these two actions under 42 U.S.C. § 1983, moves for summary judgment, and plaintiffs Anthony N. Potenza and Gregory D. Reynolds cross-move for summary judgment (*Potenza v. Gonzales*, 5:07-CV-225, Dkt. Nos. 47, 50; *Reynolds v. Gonzales*, 5:07-CV-226, Dkt. Nos. 47, 50). Plaintiffs claim that Gonzalez, a police officer employed by Cornell University ("Cornell"), violated their rights under the United States Constitution to be free from false arrest, malicious prosecution, and abuse of process. As explained below, the Court denies the motions.

**BACKGROUND**

The actions stem from Gonzalez' arrest of plaintiffs for disorderly conduct outside Lynah Rink at Cornell at the beginning of an ice hockey game on January 16, 2004, and the ensuing prosecution in Ithaca City Court. The accusatory instruments filed by Gonzalez charged Potenza with disorderly conduct in violation of subdivisions (1) and (3) of section 240.20 of the New York Penal Law ("section 240.20"), and Reynolds with disorderly conduct in violation of subdivision (3) of section 240.20. The applicable provisions read:

> A person is guilty of disorderly conduct when, with intent to cause public inconvenience, annoyance or alarm, or recklessly creating a risk thereof:
>
> 1. He engages in fighting or in violent, tumultuous or threatening behavior; or
> \*\*\*
> 3. In a public place, he uses abusive or obscene language, or makes an obscene gesture[.]

On June 3, 2004, Ithaca City Judge Judith A. Rossiter held a joint bench trial on the

---

[1] Defendant affirms that the correct spelling of his name is Gonzalez, not Gonzales as it is spelled in the captions of the complaints.

charges. Gonzalez was the sole witness. He was not questioned about the number of other people in the area at the time of the arrests or other factors relevant to whether plaintiffs acted "with intent to cause public inconvenience, annoyance or alarm, or recklessly creat[ed] a risk thereof", nor did he volunteer any testimony on the issue. In her written decision acquitting Potenza and Reynolds of "Disorderly conduct as charged", Judge Rossiter made the following findings of fact and conclusions of law:

> On January 16, 2004, the defendants entered Lynah Rink on the Cornell campus. Officer Gonzalez of the Cornell University Police Department testified that both men appeared intoxicated and that they attempted to enter a section of the rink other than the one denoted on their tickets. Officer Gonzalez directed both individuals to leave Lynah Rink and accompany him outside. Both Mr. Reynolds and Mr. Potenza complied with that directive. Once outside, the officer requested identification from Mr. Reynolds and Mr. Potenza. The officer testified that, during the exchange with the two defendants outside the rink, each used abusive or obscene language and acted in a manner with intent to cause public inconvenience, annoyance, or alarm, or recklessly created the risk of same. However, at no time did the officer testify that anyone else was present in the parking lot besides the two defendants and himself. In other words, there was no allegation in either accusatory instrument nor any evidence presented by the Prosecution that any other members of the public were present or inconvenienced by the inappropriate behavior of the defendants.
>
> The intent of the Disorderly Conduct statute is to proscribe that type of conduct that has a real tendency to provoke public disorder (*Practice Commentary, PL §240.20, McKinney's Consolidated Laws of New York Annotated*). The lead case on this point is *People v. Munafo* (50 NY2d 326), which requires that the behavior proscribed by the statute be of a public rather than an individual dimension. To determine if the behavior comes within the Disorderly Conduct statute, the Court must make findings about the number of people attracted by the conduct, taking into account the surrounding circumstances, including the time and place of the event. In this instance, as indicated above, no evidence was presented that any members of the public were attracted by the conduct that occurred outside the rink, which is the only unlawful conduct charged within the accusatory instruments. There is no question that the officer was perfectly within his right to direct the defendants to leave Cornell property, given that they were intoxicated and attempted to enter a section for which they did not

> have tickets. However, the Court must find the defendants not guilty of
> Disorderly Conduct as charged, on the grounds of lack of evidence of
> any public, as opposed to private, disturbance.

The present actions, commenced in New York State Supreme Court on January 16, 2007, were removed to this Court on March 2, 2007. Gonzalez moves for summary judgment in both cases (*Potenza v. Gonzales*, 5:07-CV-225, Dkt. No. 47; *Reynolds v. Gonzales*, 5:07-CV-226, Dkt. No. 47). Plaintiffs cross-move for summary judgment in both cases (*Potenza v. Gonzales*, 5:07-CV-225, Dkt. No. 50; *Reynolds v. Gonzales*, 5:07-CV-226, Dkt. No. 49).

## DISCUSSION

**Summary judgment**

Summary judgment is appropriate if, viewing the evidence in the light most favorable to the nonmovant, the court determines that there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56 (c); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). If the movant satisfies the burden of establishing that there is no genuine issue of material fact, then the burden shifts to the nonmovant to proffer evidence demonstrating that a trial is required because a disputed issue of material fact exists. *Id*. If, as to the issue on which summary judgment is sought, there is evidence in the record from any source from which an inference could be drawn in favor of the nonmoving party, summary judgment must be denied. *See Cronin v. Aetna Life Ins. Co.*, 46 F.3d 196, 203 (2d Cir. 1995).

**False arrest**

To prove false arrest under 42 U.S.C. § 1983, a plaintiff must prove that the defendant intentionally confined him without his consent and without justification. *See Weyant v. Okst*, 101 F.3d 845, 852 (2d Cir. 1996). The existence of probable cause to arrest constitutes justification;

"[t]here can be no federal civil rights claim for false arrest where the arresting officer had probable cause." *Singer v. Fulton Co. Sheriff*, 63 F.3d 110, 118 (2d Cir. 1995). Probable cause to arrest exists where "the arresting officer has knowledge or reasonably trustworthy information sufficient to warrant a person of reasonable caution in the belief that an offense has been committed by the person to be arrested." *Id*. at 119 (citation and internal quote omitted). The Second Circuit explains:

> While probable cause requires more than a mere suspicion of wrongdoing, its focus is on probabilities, not hard certainties. In assessing probabilities, a judicial officer must look to the factual and practical considerations of everyday life on which reasonable and prudent men, not legal technicians, act.... In sum, probable cause does not demand any showing that a good-faith belief be correct or more likely true than false. It requires only such facts as make wrongdoing or the discovery of evidence thereof probable.

*Walczyk v. Rio*, 496 F.3d 139, 156-57 (2d Cir. 2007) (citations and internal quotes omitted).

As noted, section 240.20 provides that a person is guilty of disorderly conduct when, "with intent to cause public inconvenience, annoyance or alarm, or recklessly creating a risk thereof[,]" he "engages in fighting or in violent, tumultuous or threatening behavior" (subdivision 1), or he "uses abusive or obscene language, or makes an obscene gesture" in a public place (subdivision 3). The disorderly conduct statute "is directed at words and utterances coupled with an intent to create a risk of public disorder[.]" *People v. Tichenor*, 89 N.Y.2d 769, 775 (1997). The statute "punishes 'disruptive behavior ... of public rather than individual dimension.' " *Provost v. City of Newburgh*, 262 F.3d 146, 157 (2d Cir. 2001) (quoting *People v. Munafo*, 50 N.Y.2d 326, 331 (1980). As New York's high court stated in *Munafo*: "The clear aim was to reserve the disorderly conduct statute for situations that carried beyond the concern of individual disputants to a point where they had become a potential or immediate public problem." 50

N.Y.2d at 331.

The record presents questions of fact material to whether Gonzalez could reasonably have believed that plaintiffs engaged in disorderly conduct.  On the questions of whether plaintiffs used abusive or obscene language and whether Potenza behaved in a tumultuous or threatening manner, Gonzalez relies on his City Court testimony that plaintiffs appeared intoxicated, were staggering, and smelled strongly of alcohol.  He described in some detail plaintiffs' uncooperative, abusive, disruptive and threatening conduct. Gonzalez submits an affirmation from Earl Westbrook, an usher, that when he encountered plaintiffs inside the rink, both "had the odor of alcohol, speech was slurred and could not walk straight."  Gonzalez also relies on the affidavit of Cornell Police Sergeant Charles E. Howard, who arrived on the scene during the altercation outside the rink, stating that plaintiffs appeared highly intoxicated and used "extreme" profanity, and that Potenza made a "menacing" movement toward Gonzalez.  The motion papers also contain the affidavit of Cornell Police Officer Ronald Rogers, who transported plaintiffs from Lynah Rink to Cornell police headquarters at Barton Hall after the arrests.  Rogers stated they were "obviously intoxicated, agitated, using profanity, and speaking very loudly." [2]

In further support of his motions, Gonzalez points to evidence supporting his contention that he reasonably believed that plaintiffs intended to cause public inconvenience, annoyance or alarm, or recklessly created a risk thereof.  Such evidence includes the time, location, and circumstances surrounding the incident; Gonzalez' description of plaintiffs' conduct; his

---

[2] This Court has already ruled that Gonzalez is entitled to an adverse inference instruction in his favor, based on the disappearance of a videotape taken of Reynolds by Cornell police at Barton Hall approximately an hour after Reynolds' arrest.  *See Potenza v. Gonzales*, 5:07-CV-225, Dkt. No. 46; *Reynolds v. Gonzales*, 5:07-CV-226, Dkt. No. 46).

testimony that approximately a dozen people were outside the rink when he escorted plaintiffs outside; and Howard's statement that he and Gonzalez decided to remove plaintiffs from the scene "to prevent the disruption of other spectators."

In opposition and in their cross motions for summary judgment, plaintiffs submit evidence supporting their argument that there was no probable cause to arrest them for disorderly conduct. They rely primarily on their own testimony about the events leading up to the arrests. Their version of events differs substantially from Gonzalez' (and, in some respects, from each other's). They state they were not intoxicated and deny engaging in most of the conduct described by Gonzalez, Westbrook, Howard, and Rogers. Plaintiffs further contend that no reasonable officer could have believed they intended to cause public inconvenience, annoyance or alarm, or recklessly created a risk thereof. Reynolds did not remember anyone outside when Gonzalez escorted them out of the rink. Potenza testified that he saw other people entering the building as he and Reynolds arrived at the rink, but that he did not know whether there were people outside when Gonzalez escorted them out, 20 or 30 seconds later. Clearly, the parties' differing versions of events present material questions of fact.

The fact that plaintiffs were acquitted on the disorderly conduct charges is not conclusive on whether Gonzalez had probable cause to arrest them for disorderly conduct. *See People v. Early*, 445 N.Y.S.2d 252, 254 (3d Dep't 1981) (holding that although the trial evidence "lacked proof of the necessary element of 'public' disturbance to support the disorderly conduct convictions ... it does not follow that the police were not performing a lawful duty in making the disorderly conduct arrest." (citation omitted)); *see also Whyte v. City of Yonkers*, 828 N.Y.S.2d 218 (2d Dep't 2007). Further, there is no merit to plaintiffs' argument that Judge Rossiter's

-7-

dismissal of the criminal charges collaterally estops Gonzalez from proving in this Court that he reasonably believed plaintiffs intended to cause public inconvenience, annoyance or alarm, or recklessly created a risk thereof. The issue of probable cause to arrest was not decided in the City Court case, nor did Gonzalez – a non-party to the City Court case – have a full and fair opportunity to litigate the issue. *See Jenkins v. City of New York*, 478 F.3d 76, 85-86 (2d Cir. 2007). Having found questions of fact regarding whether Gonzalez had probable cause to arrest plaintiffs, the Court denies the motions and cross motions addressed to plaintiffs' false arrest claims under section 1983.

**Malicious prosecution**

The elements of a malicious prosecution claim under New York common law are: "(1) that the defendant commenced or continued a criminal proceeding against [the plaintiff]; (2) that the proceeding was terminated in the plaintiff's favor; (3) that there was no probable cause for the proceeding; and (4) that the proceeding was instituted with malice." *Droz v. McCadden*, 580 F.3d 106, 109 (2d Cir. 2009) (citation omitted). The first two elements are met here; Gonzalez filed the accusatory instruments, and the ensuing City Court proceedings were terminated in plaintiffs' favor. As to the third element – whether Gonzalez had probable cause to file the accusatory instruments – the questions of fact that bar summary judgment on the false arrest claims also bar summary judgment on the malicious prosecution claims. These questions of fact also bear on whether Gonzalez acted with malice so as to satisfy the fourth element. In addition, to make out a malicious prosecution claim under section 1983, plaintiffs must prove that a Fourth Amendment deprivation of liberty resulted from the legal process. *See Washington v. County of Rockland*, 373 F.3d 310, 316 (2d Cir. 2004) (citing *Albright v. Oliver*, 510 U.S. 266 (1994)). Plaintiffs argue

that this element is met by the post-arraignment travel restrictions imposed on them and the requirement that they appear in court for the criminal trial; this element does not appear to be in dispute. Material questions of fact preclude summary judgment on the motions and cross motions on plaintiffs' section 1983 malicious prosecution claims.

**Abuse of process**

Under New York common law, an abuse of process claim lies against a defendant who "(1) employs regularly issued legal process to compel performance or forbearance of some act (2) with intent to do harm without excuse or justification, and (3) in order to obtain a collateral objective that is outside the legitimate ends of the process." *Cook v. Sheldon*, 41 F.3d 73, 80 (2d Cir. 1994). Abuse of criminal process constitutes a denial of procedural due process, and thus is actionable under section 1983. *Id*. Gonzalez argues that, because he had probable cause to file the accusatory instruments against plaintiffs, as a matter of law he did not use the legal process for a wrongful purpose. Because there are material questions of fact on the issue of probable cause, the motions for summary judgment on this issue are denied.

**Qualified immunity**

Finally, Gonzalez argues that he is entitled to summary judgment on the ground of qualified immunity. Government officials performing discretionary functions enjoy a qualified immunity shielding them from civil damages liability as long as their actions could reasonably have been thought consistent with the rights they are alleged to have violated. *See Anderson v. Creighton*, 483 U.S. 635, 638 (1987).

A police officer is immune from a false arrest claim "if either (a) it was objectively reasonable for the officer to believe that probable cause existed, or (b) officers of reasonable

competence could disagree on whether the probable cause test was met." *Posr v. Court Officer Shield No. 207*, 180 F.3d 409, 416 (2d Cir. 1999) (citation and internal quote omitted).  The Second Circuit has explained this concept of "arguable probable cause" as follows:

> Arguable probable cause exists when a reasonable police officer in the same circumstances and possessing the same knowledge as the officer in question *could* have reasonably believed that probable cause existed in the light of well established law. It is inevitable that law enforcement officials will in some cases reasonably but mistakenly conclude that probable cause is present, and we have indicated that in such cases those officials – like other officials who act in ways they reasonably believe to be lawful – should not be held personally liable.

*Cerrone v. Brown*, 246 F.3d 194, 203 (2d Cir. 2001) (quotations and citations omitted, emphasis in original).

As discussed above, the record presents material factual disputes.  These factual disputes preclude a determination on whether a reasonable police officer in the same circumstances and possessing the same knowledge as Gonzalez could have reasonably believed that he had probable cause to arrest plaintiffs and file the accusatory instruments.  Summary judgment on the ground of qualified immunity is denied.

## CONCLUSION

It is therefore

ORDERED that defendant's motion for summary judgment in *Potenza v. Gonzales*, 5:07-CV-225 (Dkt. No. 47) is denied; and it is further

ORDERED that plaintiff's cross motion for summary judgment in *Potenza v. Gonzales*, 5:07-CV-225 (Dkt. No. 50) is denied; and it is further

ORDERED that defendant's motion for summary judgment in *Reynolds v. Gonzales*, 5:07-CV-226 (Dkt. No. 47) is denied; and it is further

ORDERED that plaintiff's cross motion for summary judgment in *Reynolds v. Gonzales*, 5:07-CV-226 (Dkt. No. 49) is denied; and it is further

ORDERED that this case is Deemed Trial Ready as of September 30, 2010. The Jury Trial is scheduled for December 2, 2010, at 9:00 a.m., in Syracuse, New York.

IT IS SO ORDERED.

Date:  July 1, 2010
         Syracuse, New York

_____
Norman A. Mordue
Chief United States District Court Judge