UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

ANTHONY N. POTENZA,

                              Plaintiff,

      v.                                    5:07-cv-225

DANIEL GONZALES,

                              Defendant.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

GREGORY D. REYNOLDS,

                              Plaintiff,

      v.                                    5:07-cv-0226

DANIEL GONZALES,

                              Defendant

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

THOMAS J. McAVOY
Senior United States District Judge

## DECISION and ORDER

Plaintiffs commenced the instant actions pursuant to 42 U.S.C. § 1983 seeking damages for alleged Fourth Amendment violations. The Court presumes familiarity with the underlying facts of this case and the prior decisions in these cases concerning: (1) the denial the parties' motions for summary judgment; (2) the granting of Defendant's (and denial of Plaintiffs') motions for sanctions as a result of the spoliation of the video tape; and (3) the denial of Plaintiff Potenza's motion to sever his trial from that of Plaintiff Reynolds on the ground that the lost videotape only depicted Reynolds.

**I.      BACKGROUND**

This matter was tried before a jury from December 6, 2010 through December 9, 2010.  The jury answered special interrogatories and, upon consideration of the questions in the verdict sheet, returned verdicts in favor of Defendant.  Presently before the Court are Plaintiffs' motions for a new trials pursuant to Fed. R. Civ. P. 59 on the grounds that: (1) the Court failed to give a City of Houston charge; (2) the Court failed to properly instruct the jury concerning N.Y. Crim. Pro. L. § 140.50; and (3) the adverse inference charge was unfair.

**II.     STANDARD OF REVIEW**

"A district court may grant a new trial pursuant to Rule 59 even when there is evidence to support the jury's verdict, so long as the court 'determines that, in its independent judgment, the jury has reached a seriously erroneous result or its verdict is a miscarriage of justice.'" AMW Materials Testing, Inc. v. Town of Babylon, 584 F.3d 436, 456 (2d Cir. 2009) (quoting Nimely v. City of New York, 414 F.3d 381, 392 (2d Cir. 2005)).  "[A] trial judge is free to weigh the evidence himself, and need not view it in the light most favorable to the verdict winner." DLC Mgmt. Corp. v. Town of Hyde Park, 163 F.3d 124, 133-34 (2d Cir. 1998).

**III.    DISCUSSION**

    **a.      "City of Houston" Charge**

Relying on City of Houston, Tex. v. Hill, 482 U.S. 451 (1987), and Provost v. City of Newburgh, 262 F.3d 146 (2d Cir. 2001), Plaintiffs argue that the Court should have instructed the jury that the use of profanity alone is an insufficient basis upon which to arrest someone for violating N.Y. Penal Law § 240.20.  Plaintiffs argue that their speech did not constitute

fighting words, was constitutionally protected and, therefore, could not have been the basis for a lawful arrest.

In City of Houston, the Supreme Court iterated that laws that punish only spoken words run afoul of the First Amendment. 482 U.S. at 461. Here, although the Court did not instruct the jury concerning First Amendment principles, the jury heard evidence from Defendant himself that the use of profanity alone was an insufficient basis for arrest. Accordingly, the Court does not find that the failure to give a specific charge on the issue caused a seriously erroneous result or resulted in a miscarriage of justice.

Moreover, the Provost case is readily distinguishable because, in that case, the defendant "concede[d] the possibility that there were justifiable reasons for [the] disruptive conduct underlying . . . [the] arrest." 262 F.3d at 158. Further, the evidence in Provost permitted the jury to reasonably conclude that the plaintiff did not engage in aggressive or threatening behavior. Here, by contrast, the facts are quite different. The jury could readily have found that there was no justifiable reason for Plaintiff's conduct. Plaintiffs were inside the hockey rink and attempting to sit in a section other than that for which they held tickets. An usher at the game reported to Defendant that he was concerned for Plaintiffs well-being and safety because they both smelled of alcohol, had slurred speech, and were unable to walk straight. It was at that time that Defendant approached Plaintiffs and asked them for identification. By all accounts, Plaintiffs were less than polite in their response to Defendant. Ultimately, Defendant escorted Plaintiffs out of the rink. There was evidence at trial that, once outside the rink, Plaintiffs engaged in behavior that could reasonably be deemed to be threatening and/or likely to cause public alarm. Thus, unlike in Provost, it was reasonable for the jury to conclude that Defendant believed Plaintiffs to be acting with the intent necessary

to violate the disorderly conduct statute and that Plaintiffs' actions went beyond mere speech and also engaged in aggressive and/or threatening behavior.

To prove the crime of disorderly conduct in violation of §240.20, the prosecution has to prove: (1) the defendant's conduct is "public" in nature; (2) the defendant's conduct must be done with "intent to cause public inconvenience, annoyance, or alarm" or with a "risk thereof;" and (3) the defendant's conduct must match one of the descriptions set forth in the statute.  As noted by the New York Court of Appeals, "[t]he disorderly conduct statute . . . does not circumscribe pure speech directed at an individual. . . .  Rather, it is directed at words and utterances coupled with an intent to create a risk of public disorder, which the State has the authority and responsibility to prohibit, prevent and punish."  People v. Tichenor, 89 N.Y.2d 769, 775 (1997).  "The clear aim was to reserve the disorderly conduct statute for situations that carried beyond the concern of individual disputants to a point where they had become a potential or immediate public problem."  People v. Munafo, 50 N.Y.2d 326, 331 (1980).

The facts as found by the jury take Plaintiffs' conduct outside the realm of constitutionally protected speech by focusing on Plaintiffs' intent and actions.  The jury was given special interrogatories that directly addressed the elements necessary for a conviction of the disorderly conduct statute.  The jury found that: (1) "Gonzalez's interactions with [Plaintiffs were] in a public place;" (2) [Plaintiffs], through [their] actions, inactions, and/or words, intend[ed] to cause public annoyance or alarm or recklessly create a risk thereof;" and (3) "[Plaintiffs] through [their] words and/or actions, present[ed] a threat to Gonzalez or otherwise engage[d] in violent, tumultuous or threatening behavior, or use[d] abusive or

obscene language, or [made] an obscene gesture."[1] The jury also found that Plaintiffs were under the influence of alcohol, or appeared to be under the influence of alcohol, and that they disregarded, ignored, and refused to obey the orders and commands of Gonzalez or Sergeant Howard. All these facts are pertinent in considering whether Plaintiffs' conduct was constitutionally protected.

Through the jury's specific findings, and its ultimate verdict, the jury assessed Plaintiffs' conduct, addressed the elements of the disorderly conduct statute, and found them to be satisfied (or at least found that Defendant had probable cause to believe Plaintiffs violated the statute).[2] The jury was not asked to consider Plaintiffs' words alone, but the context and circumstances under which the words were spoken. The jury found that Plaintiffs did not merely utter abusive or obscene language, but that, together with their actions, they intended to create, or created, a risk of public disorder. Because the jury was asked to consider, and decided, the issues concerning the circumstances surrounding Plaintiffs' words and conduct and found Plaintiffs to have acted with the intent necessary to invoke the disorderly conduct statute, the Court sees no reason to disturb the jury's verdict. Accordingly, the Court finds any error in failing to instruct the jury pursuant to City of Houston to be harmless.

### b.     Failure to Instruct Concerning N.Y. Crim. Pro. Law § 140.50

Plaintiffs next argue that they should be granted a new trial because the Court failed to instruct the jury that, pursuant to N.Y. Crim. Pro. Law § 140.50, Defendant had no

---

[1] This third finding encompasses two separate acts supporting a disorderly conduct charge.

[2] The jury also was instructed that "if Defendant has proven . . . that he had probable cause to arrest Plaintiff[s]. . . you must find in favor of Defendant."

- 5 -

legal right to ask for Plaintiffs' identification.  Assuming Plaintiffs did not waive this argument, and further assuming that Defendant had no such right, the failure to give an instruction pursuant to § 140.50 is not a basis for a new trial.  Plaintiffs were not arrested for failing to produce identification.  The issue in this case was whether Defendant had probable cause to arrest Plaintiffs for disorderly conduct.  The jury found he did.

        **c.**        **Adverse Inference Charge**

Finally, Plaintiffs again challenge the Court's ruling concerning the adverse inference charge.  This issue has already been ruled on and the Court finds no basis to disturb the prior rulings.

**IV.**        **CONCLUSION**

For the foregoing reasons, Plaintiffs' motions for new trials are DENIED.

IT IS SO ORDERED.

Dated: February 7, 2011

_____
Thomas J. McAvoy
Senior, U.S. District Judge